UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAMIE VAN TUYL, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) No. 1:13-cv-00322-SEB-TAB |
| ROLLS-ROYCE WELFARE BENEFITS PLAN, AETNA LIFE INSURANCE COMPANY, | ) ) ) ) |
| Defendants. | ) ) |

**ORDER ON DEFENDANTS' MOTION FOR DISMISSAL OF COMPLAINT FOR WANT OF PROSECUTION AND FOR DEFAULT JUDGMENT ON DEFENDANTS' COUNTERCLAIM**

This cause is now before the court on Defendants' Motion for Dismissal of Complaint for Want of Prosecution and for Default Judgment on Defendants' Counterclaim [Docket No. 37], filed on March 24, 2014, pursuant to Rules 41(b) and 55 of the Federal Rules of Civil Procedure.

**Factual Background**

Plaintiff Jamie Van Tuyl filed the complaint in this case on February 26, 2013, alleging that she was denied disability benefits rightfully due to her in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*. She was at that time represented by counsel. Defendants, Rolls-Royce Welfare Benefits Plan ("the Plan") and Aetna Life Insurance Company ("Aetna") (collectively, "Defendants"), subsequently filed an answer to the complaint and a counterclaim against Plaintiff for $50,216.10 in overpayments made under the Plan. In their counterclaim, Defendants allege that at the time Plaintiff was receiving

1

payments from the Plan, she was also receiving Social Security payments that should have reduced the payments made under the Plan.

Plaintiff, through counsel, answered the counterclaim on May 7, 2013, admitting that she received federal Social Security benefits beginning on November 1, 2009, and that she began receiving long-term disability payments through the Plan starting on November 28, 2009. In response to the factual allegations contained in Defendants' counterclaim that the Plan explicitly provides that the benefit amount available under the Plan is to be reduced by other income benefits, including Social Security benefits, and that Aetna may recover for overpayment of long-term disability benefits by taking legal action, Plaintiff stated only: "The Plan speaks for itself." Ans. to Counterclaim at ¶¶ 3, 5.

On September 5, 2013, the parties appeared before Magistrate Judge Baker in a telephone status conference, during which the parties agreed to file a status report or stipulation of dismissal within thirty days. The parties subsequently requested and were granted extensions of twenty-one and fifteen days, respectively, as they attempted to negotiate a settlement. On November 11, 2013, the parties filed a status report requesting a status conference with the court. After a December 5, 2013 status conference, the parties were again ordered to file a dismissal or a status report by January 27, 2014.

Prior to the January 27 deadline, however, both of Plaintiff's attorneys filed motions for leave to withdraw, citing the fact that Plaintiff's telephone number had been disconnected and that Plaintiff had "not responded to the numerous attempts that [Plaintiff's counsel had] made to contact her over the past several weeks." Docket Nos. 32 and 33. On January 30, 2014, Magistrate Judge Baker issued an order setting a telephonic status conference for February 7, 2014, and ordered Plaintiff to appear by telephone. Despite the Magistrate Judge's order,

Plaintiff failed to appear at the February 7 teleconference. Magistrate Judge Baker issued a minute entry on February 10, 2014, setting another telephonic status conference for February 21, 2014 and ordering Plaintiff to personally participate in the conference. That order further provided: "If Plaintiff fails to personally participate in this conference, the Magistrate Judge will recommend dismissal of her claims." Docket No. 35. Despite the Court's clear order, Plaintiff failed to appear at the February 21 telephonic status conference.

Magistrate Judge Baker issued another order on February 24, 2014 following the February 21 status conference, stating in relevant part as follows:

> The Court attempted unsuccessfully to contact Plaintiff by phone for the February 21 conference, and it is not clear that the phone number the Court has is valid. Plaintiff's counsel indicated that she had written to the Plaintiff advising her that her failure to appear for the February 21 conference could result in dismissal of her case. Plaintiff responded with a phone message to her counsel indicating that she was moving but she did not provide updated contact information. She also reportedly told her counsel that she did not feel obligated to participate in the conference.

Docket No. 36. Although Magistrate Judge Baker noted in his February 24 order that dismissal of Plaintiffs' complaint would be "proper" given her failure to appear, because of Defendants' counterclaim, he provided Defendants until March 24, 2014 to file a motion to dismiss or a motion for entry of default. The Magistrate Judge provided Plaintiff an additional opportunity to indicate her willingness to continue to pursue the litigation, setting a deadline for March 14, 2014 for Plaintiff to have new counsel file an appearance on her behalf or to inform the Court that she intended to proceed *pro se*. As of this date, Plaintiff has failed to file any such notice with the Court.

On March 24, 2014, Defendants filed the instant Motion to Dismiss for Lack of Prosecution and Motion for Default Judgment, seeking dismissal of Plaintiff's claims pursuant to

Rule 41(b) and an entry of default on their counterclaim pursuant to Rule 55, based on Plaintiff's failure to defend. Plaintiff has failed to respond to Defendant's motion.

## Legal Analysis

### I. Lack of Prosecution

Federal Rule of Civil Procedure 41(b) allows for dismissal of a plaintiff's claim "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order." A dismissal for want of prosecution under Rule 41(b) "is an extraordinarily harsh sanction that should be used only in extreme situations, when there is a clear record of delay or contumacious conduct, or where other less drastic sanctions have proved unavailing." *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 561 (7th Cir. 2011) (quotation marks and citation omitted). Whether such a dismissal is appropriate depends on the circumstances of the case, including the frequency and egregiousness of the plaintiff's failures, the effect of the mistakes on the court, the prejudice resulting to the defendant, the probable merits of the suit, whether the responsibility for mistakes is attributable to the plaintiff herself or the plaintiff's lawyer, and the consequences of dismissal for the social objectives of the type of litigation that the suit represents. *Id.*

Here, Plaintiff has failed to comply on multiple occasions with the court's orders that she appear at telephonic status conferences and also with the court's order that she either have new counsel appear on her behalf or file a notice indicating her desire to represent herself and to provide the court with her current phone number and address. Plaintiff's repeated failures to attend to this litigation have caused the court to expend valuable time and limited resources addressing her dilatory conduct and have prejudiced Defendants in their ability to defend this case. It is true that no case should be dismissed for failure to prosecute without a warning to the plaintiff, *Bolt v. Loy*, 227 F.3d 854, 856 (7th Cir. 2000), but the court specifically warned

Plaintiff in a February 10, 2014 order that her failure to attend the February 21, 2014 status conference could result in dismissal. Plaintiff's then-counsel relayed the court's warning to her and in response Plaintiff indicated that she was moving but did not provide updated contact information to her counsel or the court and also reportedly told her counsel that she did not feel obligated to participate in the conference. Docket No. 36. Given Plaintiff's blatant and repeated disregard of the court's orders and apparent abandonment of the litigation as evidenced by her failure to provide the court with her updated contact information and failure on multiple occasions to attend status conferences with the court, we are satisfied that dismissal is appropriate here.

## II. Entry of Default

Federal Rule of Civil Procedure 55 governs the entry of default and default judgment. Here, Defendants have moved for a default judgment against Plaintiff based on her failure to defend against their counterclaim. However, prior to obtaining a default judgment under Rule 55(b)(2), there must first be an entry of default as provided under Rule 55(a). Rule 55(a) provides that the clerk is to enter the default of a party against whom a judgment of affirmative relief is sought when that party has failed to plead or otherwise defend. Under Seventh Circuit law, "[a] default judgment is the mirror image of a dismissal of a suit for failure to prosecute" and "[t]he standard for whether to impose them should, therefore, be the same …." *Philips Med. Sys. Int'l B.V. v. Bruetman*, 8 F.3d 600, 602 (7th Cir. 1993) (citations omitted). Once the clerk enters default, it is within the court's discretion to enter default judgment. *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993). The party moving for default judgment must establish an entitlement to the relief sought. *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004). Even when default is warranted, allegations regarding the amount of damages are not

taken to be true; instead, the court must conduct "an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id.* (citation and quotation marks omitted).

In this case, Plaintiff did answer Defendant's counterclaim on May 7, 2013. But as described above, since that time, she has abandoned both her pursuit of her own claims as well as her defense to Defendant's counterclaim by failing to keep the court updated as to her current contact information and ignoring the court's orders to attend settlement conferences on multiple occasions. Accordingly, <u>the Clerk is directed to enter default against Plaintiff on Defendants' counterclaim based on Plaintiff's failure to defend</u>. Once the Clerk has entered a default against Plaintiff, the Clerk shall mail to Plaintiff at her last known address a copy of this order and a copy of the entry of default. Within thirty days of the entry of default on the docket, Defendants are ordered to submit a motion for default judgment, along with supporting materials, and a proposed default judgment order. If necessary, an evidentiary hearing to determine damages[1] will be set after our review of Defendants' submissions and any response that may be filed by Plaintiff.

IT IS SO ORDERED.

Date: 04/24/2014

*signature*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[1] A hearing on damages will be necessary unless the amount claimed by Defendants is "capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983) (citations omitted).

Distribution:

JAMIE VAN TUYL
1555 E. 49th Street
Indianapolis, IN 46205

Elizabeth A. McDuffie
GONZALEZ SAGGIO & HARLAN, LLP
liz_mcduffie@gshllp.com